UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK K. JACKSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-01884-AGF |
| | ) | |
| LT. UNKNOWN BROCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Mark K. Jackson, Jr. for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $10.26. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against defendants Lt. Unknown Wade-Livingston, Capt. W. Turner, Lt. Unknown Moss, Derrick Baker, and Felita Bain. However, the Court will direct the Clerk of Court to issue process on defendants Lt. Unknown Brock and Dr. Unknown Fuentes in their individual capacities.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the

prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of the instant motion, plaintiff submitted a certified inmate account statement. (Docket No. 4). The account statement shows an average monthly deposit of $51.31. The Court will therefore assess an initial partial filing fee of $10.26, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual

allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently a pretrial detainee at the St. Louis City Justice Center (SLCJC) in St. Louis, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. He names the following individuals as defendants: Lt. Unknown Brock; Lt. Unknown Wade-Livingston; Capt. W. Turner; Lt. Unknown Moss; Doctor Unknown Fuentes; Derrick Baker; and Felita Bain. Defendants are sued in both their individual and official capacities. The complaint concerns plaintiff's alleged assault by inmate Derrick Baker.

On July 30, 2018, at around 5:30 a.m., plaintiff states that he was escorted to the dress out area on the second floor of the SLCJC. (Docket No. 1 at 3). This is the area where inmates get

ready for court. Once there, plaintiff realized that he had forgotten to bring a motion with him that he needed for court. The motion had been left in plaintiff's cell on the fifth floor. Plaintiff states that he asked Lt. Brock if he could retrieve the motion. (Docket No. 1 at 3-4). According to plaintiff, Lt. Brock refused, and told him that his "dumb a-- shouldn't have left it upstairs." (Docket No. 1 at 4). Defendant Brock also told plaintiff to step into Cell A.

Plaintiff states that he told Lt. Brock that "he's not [going to] talk to [him] like that," and that he refused to step into Cell A because he needed his motion for court. Thereafter, plaintiff and Lt. Brock exchanged "derogatory terminology towards one another" until Lt. Brock left the area.

While Lt. Brock was away, plaintiff asked another officer to retrieve his motion for him. The officer agreed to get the motion, and told plaintiff to get into Cell A. Plaintiff complied and stepped into the cell.

When Lt. Brock returned, plaintiff states that he asked "where did the little b---- go?" and stated "I see your little punk a-- stepped in" to the cell. At this point, plaintiff and Lt. Brock started arguing again. During this exchange, plaintiff alleges that Lt. Brock looked at inmate Derrick Baker and said "Beat his a--." Then, Lt. Brock left, whereupon plaintiff claims that Baker assaulted him and knocked a tooth loose. (Docket No. 1 at 4, 8). Plaintiff states that he did not know Baker and that Baker "did this on the order of Lt. Brock." (Docket No. 1 at 8). As a result of Baker's assault, plaintiff's bottom lip was "busted open" and a tooth was knocked back and pushed out of place. (Docket No. 1 at 4).

Plaintiff states that he saw Dr. Fuentes at around 8:10 a.m. on the morning of his alleged assault. (Docket No. 1 at 8). He states that Dr. Fuentes refused to give him proper medical attention. Specifically, he claims that she did not let him see a dentist, despite his tooth being

4

knocked out of place. Plaintiff states that his tooth is loose to this day, and that he has still not seen a dentist. He also claims that his lip and gums continue to hurt. (Docket No. 1 at 10).

At around 3:00 p.m. on July 30, 2018, the St. Louis Police Department was called to the SLCJC. (Docket No. 1 at 7). Plaintiff states that he was called out of his cell to talk to police officers about the incident. During this interview, Lt. Wade-Livingston was present. Plaintiff states that Lt. Wade-Livingston was also with him in medical while he was waiting to see the doctor. Indeed, she was on the one who called the captain and another lieutenant to medical to start the investigation. However, plaintiff alleges that even though he gave Lt. Wade-Livingston an informal resolution request (IRR) to turn in, she never did.

Plaintiff states that Capt. W. Turner came to medical and advised plaintiff that Turner and Lt. Moss would view the audio and video surveillance. Plaintiff claims that Lt. Moss "was also the investigating officer with Capt. Turner that refused to make a report of his findings." (Docket No. 1 at 8). He further states that when he started the IRR and grievance process, correctional officer Felita Bain refused to allow him "to follow the chain of command," thereby denying him due process.

Plaintiff asks the Court to order that Lt. Brock be charged with prisoner abuse and be terminated from his position at the SLCJC. (Docket No. 1 at 10). He also wants the other defendants to undergo training on offender abuse. Plaintiff is seeking damages in the amount of $300,000 for tooth and mouth repair, pain and suffering, and for mental and emotional pain.

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated when he was assaulted by another inmate in the SLCJC. For the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as

5

well as the individual capacity claims against defendants Lt. Unknown Wade-Livingston, Capt. W. Turner, Lt. Unknown Moss, Derrick Baker, and Felita Bain. However, the Court will direct the Clerk of Court to issue process on defendants Lt. Unknown Brock and Dr. Unknown Fuentes in their individual capacities.

### A. Official Capacity Claims

Plaintiff's official capacity claims must be dismissed because he has not asserted a claim of municipal liability against the City of St. Louis.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Plaintiff alleges that the defendants, with the exception of inmate Baker, are employed by the SLCJC. As such, a suit against them in their official capacities is actually a suit against the City of St. Louis, their employer.

A local governing body such as the City of St. Louis can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to

prevail on this type of claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially allege the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

In his complaint, plaintiff does not allege any facts that support the proposition that he was assaulted due to an unconstitutional policy or custom on the part of the City of St. Louis. Furthermore, he does not allege that his assault was the result of the City's deliberately indifferent failure to train or supervise its employees. Therefore, plaintiff has not stated a municipal liability claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that

would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). For this reason, plaintiff's official capacity claims must be dismissed.

### B. Individual Capacity Claim Against Defendant Baker

Plaintiff's individual capacity claim against defendant Baker must be dismissed because plaintiff has not adequately pleaded that Baker acted under color of state law.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, only state actors can be held liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson*, 388 F.3d at 590. However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Plaintiff alleges that while in the dress out area of the SLCJC, he and Lt. Brock engaged in an argument regarding court papers plaintiff had left in his cell. He alleges that Lt. Brock told

9

Baker to "Beat his a--" and then left the area. Sometime after Lt. Brock left, plaintiff claims he was assaulted by Baker. He concludes that Baker undertook the assault on Lt. Brock's orders. However, plaintiff has not alleged sufficient facts to show that there was a "mutual understanding, or a meeting of the minds" between Baker and Lt. Brock. That is, there is no indication in the complaint that Baker had previously agreed to act in concert with Lt. Brock, or even that he assented to Lt. Brock's command, thereby making him a "willful participant in joint activity with the State." As such, plaintiff has not adequately alleged that defendant Baker acted under color of law. Therefore, plaintiff's individual capacity claim against defendant Baker must be dismissed.

C. **Individual Capacity Claims Against Defendants Turner, Moss, Wade-Livingston, and Bain**

Plaintiff's claims against Capt. Turner, Lt. Moss, Lt. Wade-Livingston, and Officer Bain must be dismissed because they do not allege the violation of a constitutional right.

An inmate does not have a liberty interest in a particular procedure. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Plaintiff's claims against Lt. Wade-Livingston and Officer Bain stem from their alleged failure to follow the SLCJC's grievance process. Lt. Wade-Livingston is accused of failing to turn in an IRR, while Officer Bain "refused to allow [plaintiff] to follow the chain of command on the grievance process." A grievance procedure does not create a substantive constitutional right; therefore, the alleged failure of Lt. Wade-Livingston and Officer Bain to follow the procedure does not state a claim of constitutional liability. Likewise, plaintiff's allegations against Capt. Turner and Lt. Moss that they failed to make a report of their investigative findings do not state a constitutional claim. Even if Capt. Turner and Lt. Moss were required by jail regulations to file post-assault reports, plaintiff does not have a constitutional liberty interest in having Turner and Moss follow such regulations. Therefore, plaintiff's claims against defendants Capt. Turner, Lt. Moss, Lt. Wade-Livingston, and Officer Bain must be dismissed.

### D. Individual Capacity Claim Against Lt. Brock

Plaintiff's individual capacity claim against Lt. Brock is sufficient for purposes of § 1915 review. Under the Due Process Clause of the Fourteenth Amendment, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault by other detainees. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). Here, plaintiff alleges that Lt. Brock engaged him in an argument as to whether plaintiff could retrieve paperwork he had left in his cell. At the conclusion of their verbal exchange, plaintiff states that Lt. Brock told another inmate to "Beat his a--" and then left the area, whereupon plaintiff was assaulted. Plaintiff has adequately alleged that Lt. Brock's actions placed him at an unreasonable risk of assault. Therefore, the Clerk of Court will be directed to issue process on Lt. Brock in his individual capacity.

### E. Individual Capacity Claim Against Dr. Fuentes

Plaintiff's individual capacity claim against Dr. Fuentes for denying him dental care is sufficient for purposes of § 1915 review.

A pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

Here, plaintiff alleges that he saw Dr. Fuentes after being assaulted by inmate Baker. He alleges that he had a busted lip and that one of his teeth had been knocked back and out of place. Despite this, plaintiff asserts that he was not allowed to see a dentist. Furthermore, he alleges that he continues to suffer from lip and gum pain, and from a loose tooth. These allegations are adequate to survive initial review under § 1915. Therefore, the Clerk of Court will be directed to issue process on Dr. Fuentes in her individual capacity.

### F. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied at this time.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward v. Smith*, 721

F.3d 940, 942 (8th Cir. 2013) ("In civil cases, there is no constitutional or statutory right to appointed counsel…Rather a court may request an attorney to represent any person unable to afford counsel"). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $10.26 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 3) is **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the individual capacity claims against defendants Lt. Unknown Wade-Livingston, Capt. W. Turner, Lt. Unknown Moss, Derrick Baker, and Felita Bain are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on Lt. Unknown Brock and Dr. Unknown Fuentes in their individual capacities. Defendants Brock and Fuentes shall be served through the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 27th day of March, 2019.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE